Timothy J. Walton (State Bar No. 184292)
Jim C. Twu (State Bar No. 175032)
WALTON TWU LLP
9515 Soquel Drive Suite #207
Aptos, CA 95003
Phone: (831) 685-9800
Fax: (650) 618-8687

Daniel L. Balsam (State Bar No. 260423)
THE LAW OFFICES OF DANIEL BALSAM
2912 Diamond Street #218
San Francisco, CA 94131
Tel. & Fax: (415) 869-2873

Attorneys for Defendant/Counter-Claimant
CATHY RILEY

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA (OAKLAND DIVISION)**

| | |
|---|---|
| DAVISON DESIGN & DEVELOPMENT INC., *et al*,<br><br>Plaintiffs,<br><br>vs.<br><br>CATHY RILEY,<br><br>Defendant. | Case No. 4:11-cv-02970 (PJH)<br><br>**DECLARATION OF DANIEL BALSAM IN SUPPORT OF COUNTER-CLAIMANT'S MOTION FOR LEAVE TO AMEND COUNTER-CLAIMS**<br><br>Date: October 23, 2013<br>Time: 9:00 am<br>Courtroom: 3, 3rd Floor |
| CATHY RILEY,<br><br>Counter-Claimant,<br><br>vs.<br><br>SPIRE VISION HOLDINGS INC. *et al*,<br><br>Counter-Defendants. | |

Case4:11-cv-02970-PJH Document204-1 Filed08/23/13 Page2 of 42

I, Daniel Balsam, declare as follows:

1. I am an attorney duly licensed to practice law before this Court. I represent Defendant/Counter-Claimant Cathy Riley ("Riley") in this Action. I make this declaration based upon personal knowledge. If called upon to do so, I could and would testify to the truth of the facts stated in this Declaration.

2. Exhibit A is a true and correct copy of the [Proposed] Third Amended Counter-Claims for which Riley seeks leave to file.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and this declaration was signed on August 23, 2013 in San Francisco, California.

THE LAW OFFICES OF DANIEL BALSAM

/s/ Daniel L. Balsam
Daniel L. Balsam
Attorneys for Defendant/Counter-Claimant
Cathy Riley

2

DECLARATION OF DANIEL BALSAM IN SUPPORT OF
COUNTER-CLAIMANT'S MOTION FOR LEAVE TO AMEND COUNTER-CLAIMS

Exhibit A

Timothy J. Walton (State Bar No. 184292)
Jim C. Twu (State Bar No. 175032)
WALTON TWU LLP
9515 Soquel Drive Suite #207
Aptos, CA 95003
Phone: (831) 685-9800
Fax: (650) 618-8687

Daniel L. Balsam (State Bar No. 260423)
THE LAW OFFICES OF DANIEL BALSAM
2912 Diamond Street #218
San Francisco, CA 94131
Tel. & Fax: (415) 869-2873

Attorneys for Defendant/Counter-Complainant
CATHY RILEY

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA (OAKLAND DIVISION)**

| | |
|---|---|
| DAVISON DESIGN & DEVELOPMENT INC., *et al*,<br><br>Plaintiffs,<br><br>vs.<br><br>CATHY RILEY [erroneously sued as Catherine Riley],<br><br>Defendant.<br>_______________________________<br>CATHY RILEY, an individual,<br><br>Counter-Claimant,<br><br>vs.<br><br>SPIRE VISION HOLDINGS INC., a Delaware corporation,<br>CAIVIS ACQUISITION CORP. II, a | Case No. 4:11-cv-02970 (PJH)<br><br>**[PROPOSED] THIRD AMENDED COUNTER-CLAIMS**<br><br>**1. RESTRICTIONS ON UNSOLICITED COMMERCIAL E-MAIL (Cal. Bus. & Prof. Code § 17529.5)**<br><br>**DEMAND FOR JURY TRIAL (N.D. Cal. Rule 3-6(a))** |

Delaware corporation, )
CAIVIS ACQUISITION CORP. III, a Delaware corporation, )
XL MARKETING CORP., a Delaware corporation, )
SPIRE VISION LLC, a Delaware limited liability company, )
PROADVERTISERS LLC, a Delaware limited liability company, )
PRIME ADVERTISERS LLC, a Nevada limited liability company, )
MEDIACTIVATE LLC, a Nevada limited liability company, )
ON DEMAND RESEARCH LLC, a Delaware limited liability company, )
ZETA INTERACTIVE LLC, a Delaware limited liability company, )
CONNECTIONCENTRALS, a business entity of unknown organization, )
SILVERINTERACTIVE, a business entity of unknown organization, )
CREDIT LOCATOR, a business entity of unknown organization, )
MICHAEL DIMAIO, an individual, )
DAVID SMITH, an individual, )
ACCELERATED PERFORMANCE – CHANNEL MANAGEMENT LLC, a business entity of unknown organization, )
STACEY BRUCK, an individual, )
DAVISON DESIGN & DEVELOPMENT INC., a Pennsylvania corporation, )
GMB DIRECT INC., a business entity of unknown organization, )
QUOTEWIZARD.COM LLC, a Delaware limited liability company, )
SPARK NETWORKS USA LLC, a Delaware limited liability company, )
ACCELERIZE NEW MEDIA INC., a Delaware corporation, )
CHOICE HOME WARRANTY, a business entity of unknown organization, )
DAILYFINANCEGROUP.COM, a business entity of unknown organization )
DISCOVER FINANCIAL SERVICES INC., a Delaware corporation, )
)

JBR MEDIA VENTURES LLC, a Delaware limited liability company,
WEB2CARZ.COM, a business entity of unknown organization,
WELLNESS & VITALITY LTD, a U.K. limited company, and
DOES 1-100,

Counter-Defendants.

## I. INTRODUCTION

1. Counter-Claimant Cathy Riley ("Riley") brings these Third Amended Counter-Claims against Counter-Defendants for sending and advertising in at least 59 misleading Unsolicited Commercial Emails ("UCEs" or "spams") in 2011 and 12 in 2013 that violated Cal. Business & Professions Code § 17529.5. Riley seeks statutory damages of $1,000 per email and attorneys' fees and costs.

## II. PARTIES

### A. Counter-Complainant Cathy Riley

2. Cathy Riley ("Riley") is an individual and was, at all relevant times, a resident of the State of California, within the Northern District. Riley is not an Internet Service Provider ("ISP"). Riley's email address at which she received the spams at issue in this Counter-claim is a "California email address." *See* Cal. Bus. & Prof. Code § 17529.1(b)(2) and (3).

### B. Spire Vision Counter-Defendants

3. Riley is informed and believes and thereon alleges that Spire Vision Holdings Inc. is currently, and was at all relevant times, a Delaware corporation headquartered in New York, New York. Riley is informed and believes and thereon alleges that Spire Vision Holdings Inc. is a wholly-owned subsidiary of XL Marketing Corp., focused on internet marketing, and its activities include sending and advertising in unlawful spams.

4. Riley is informed and believes and thereon alleges that Caivis Acquisition Corp. II is currently, and was at all times relevant herein, a Delaware corporation headquartered in Washington, District of Columbia. Riley is informed and believes and thereon alleges that Caivis Acquisition Corp. II wholly owns a range of subsidiaries, each focused on a particular area of internet marketing, and its activities include sending and advertising in unlawful spams.

5. Riley is informed and believes and thereon alleges that Caivis Acquisition Corp. III is currently, and was at all times relevant herein, a Delaware corporation headquartered in Washington, District of Columbia. Riley is informed and believes and thereon alleges that Caivis Acquisition Corp. III wholly owns a range of subsidiaries, each focused on a particular area of internet marketing, and its activities include sending and advertising in unlawful spams.

6. Riley is informed and believe and thereon alleges that XL Marketing Corp. is currently, and was at all times relevant herein, a Delaware corporation headquartered in New York, New York. Riley is informed and believes and thereon alleges that XL Marketing Corp. wholly owns a range of subsidiaries, each focused on a particular area of internet marketing, and its activities include sending and advertising in unlawful spams.

7. Riley is informed and believes and thereon alleges that Spire Vision LLC is currently, and was at all relevant times, a Delaware limited liability company headquartered in New York, New York. Riley is informed and believes and thereon alleges that Spire Vision LLC is focused on internet marketing, and its activities include sending and advertising in unlawful spams.

8. Riley is informed and believes and thereon alleges that ProAdvertisers LLC is currently, and was at all relevant times, a Delaware limited liability company headquartered in Bear, Delaware. Riley is informed and believes and thereon alleges that ProAdvertisers LLC is a

wholly-owned subsidiary of Spire Vision Holdings Inc., focused on internet marketing, and its activities include sending and advertising in unlawful spams.

9. Riley is informed and believes and thereon alleges that Prime Advertisers LLC is currently, and was at all relevant times, a Nevada limited liability company headquartered in Reno, Nevada. Riley is informed and believes and thereon alleges that Prime Advertisers LLC is a wholly-owned subsidiary of Spire Vision Holdings Inc., focused on internet marketing, and its activities include sending and advertising in unlawful spams.

10. Riley is informed and believes and thereon alleges that MediActivate LLC is currently, and was at all relevant times, a Nevada limited liability company headquartered in Las Vegas, Nevada. Riley is informed and believes and thereon alleges that MediActivate LLC is a wholly-owned subsidiary of Spire Vision Holdings Inc., focused on internet marketing, and its activities include sending and advertising in unlawful spams.

11. Riley is informed and believes and thereon alleges that On Demand Research LLC is currently, and was at all relevant times, a Delaware limited liability company headquartered in New York, New York. Riley is informed and believes and thereon alleges that On Demand Research LLC is affiliated with the other Spire Vision entities, deceptively implies that consumers can receive gift cards merely for completing Internet-based surveys, and its activities include sending and advertising in unlawful spams.

12. Riley is informed and believes and thereon alleges that Zeta Interactive LLC is currently, and was at all relevant times, a Delaware limited liability company headquartered in New York, New York. Riley is informed and believes and thereon alleges that Zeta Interactive LLC is affiliated with the other Spire Vision entities, and its activities include sending and advertising in unlawful spams.

13. Riley is informed and believes and thereon alleges that ConnectionCentrals is, and was at all relevant times, a business entity of unknown organization, claiming its address to be a box at a branch of The UPS Store in Flint, Michigan. Riley is informed and believes and thereon alleges that notwithstanding Counter-Defendants' claims that ConnectionCentrals is a Delaware series limited liability company, neither the Delaware nor Michigan Secretary of State websites have any such entity on file. Riley is informed and believes and thereon alleges that the Spire Vision Counter-Defendants have no physical presence in Michigan. Riley is informed and believes and thereon alleges that ConnectionCentrals is a subsidiary or division or brand of XL Marketing Corp. and/or its subsidiaries, or more likely just two random words thrown together, and is focused on internet marketing, and its activities include sending and advertising in unlawful spams.

14. Riley is informed and believes and thereon alleges that SilverInteractive is, and was at all relevant times, a business entity of unknown organization, claiming its address to be a box at a branch of The UPS Store in Milford, Connecticut. Riley is informed and believes and thereon alleges that notwithstanding claims on the *SilverInteractive.com* website that SilverInteractive is a limited liability company, neither the Delaware nor Connecticut Secretary of State websites have any such entity on file. Riley is informed and believes and thereon alleges that the Spire Vision Counter-Defendants have no physical presence in Connecticut. Riley is informed and believes and thereon alleges that SilverInteractive is a subsidiary or division or brand of XL Marketing Corp. and/or its subsidiaries, or more likely just two random words thrown together, and is focused on internet marketing, and its activities include sending and advertising in unlawful spams.

15.     Riley is informed and believes and thereon alleges that Credit Locator is, and was at all relevant times, a business entity of unknown organization, claiming its address to be a box at a branch of The UPS Store in Reno, Nevada.  Riley is informed and believes and thereon alleges that the Nevada Secretary of State website has no such entity on file.  Riley is informed and believes and thereon alleges that Credit Locator is a subsidiary or division or brand of XL Marketing Corp. and/or its subsidiaries, or more likely just two random words thrown together, and is focused on internet marketing, and its activities include sending and advertising in unlawful spams.

16.     Riley is informed and believes and thereon alleges that the various Spire Vision entities do not follow corporate formalities, such that the lines between each are blurred and each is an alter-ego of the other.  To name but one example, the privacy policy on the *CommissionWizard.com* website refers to Prime Advertisers LLC as the owner, but a Whois query for the domain name *CommissionWizard.com* shows that is is registered to MediActivate LLC.

17.     Riley hereafter refers to Spire Vision Holdings Inc., Caivis Acquisition Corp. II, Caivis Acquisition Corp. III, XL Marketing Corp., Spire Vision LLC, ProAdvertisers LLC, Prime Advertisers LLC, MediActivate LLC, On Demand Research LLC, Zeta Interactive LLC, ConnectionCentrals, SilverInteractive, and Credit Locator collectively as "Spire Vision."

18.     Riley is informed and believes and thereon alleges that Michael DiMaio is an officer of some or all of the Spire Vision companies, a resident of the State of New York, and that he *personally* is the registrant of the domain name *saintreach.com*, used to send some of the 2013 spams to Riley.

19. Riley is informed and believes and thereon alleges that David Smith is a resident of the State of New York and affiliated with Spire Vision in some manner. In some of the 2013 spams, the codes embedded in the redirect links after a person clicks on the links in the spams indicate that Michael DiMaio and David Smith have the *same* affiliate ID code in Accelerize's network. Moreover, the domain servers for *clickandgetreward.com* are *ns1.bigdns.net*, *ns2.bigdns.net*, and *ns3.bigdns.net*… the same as the domain servers for *saintreach.com* – indicating that the David Smith spams originated from Spire Vision's servers and not from a third-party affiliate's servers.

**C. <u>Other Counter-Defendants</u>**

20. Riley is informed and believes and thereon alleges that Accelerated Performance – Channel Management LLC ("APCM") is a business entity of unknown organization with a primary place of business in Los Angeles, California, and operates the *AlmightyBible-Promotions.com* website.

21. Riley is informed and believes and thereon alleges that Stacey Bruck is, and was at all relevant times, an individual residing in Austin, Texas, and operates the *FiveStarAutoProtection.com* website.

22. Riley is informed and believes and thereon alleges that Davison Design & Development Inc. ("Davison") is, and was at all relevant times, a Pennsylvania corporation with a primary place of business in Pittsburgh, Pennsylvania, and operates the *Davison.com* website. Davison advertises that it can develop inventions, but Riley is informed and believes and thereon alleges that it has no real ability to do so, or at least, no ability to do so successfully. The Federal Trade Commission sued Davison & Associates Inc. (Davison's predecessor company) and its principals for fraudulent business practices related to invention development. Davison admits on its website, on a page titled "Affirmative Disclosure Statement" that can only be reached via a small, light-blue-on-dark-blue link at the bottom of the homepage, that only 14 of 48,871 clients

in the five years ending January 19, 2011, and 14 of 54,191 clients in the five years ending December 23, 2011, realized a net profit from Davison's work. Thus, Riley is informed and believes and thereon alleges that historically, 99.97% of would-be inventors lost money working with Davison, and *every* new inventor-client in 2011, when Davison advertised in the emails at issue, lost money working with Davison. Davison also discloses that only 0.001% of its income came from royalties on licenses of consumers' products, which means that 99.999% of Davison's income comes from up-front flat fees paid by would-be inventors. Riley is informed and believes and thereon alleges that every "Davison licensing deal" has a royalty component, and since just 0.001% of its income comes from royalties, Davison's disclosures indicate that it has no real ability to actually successfully develop products and bring them to market successfully. Moreover, Davison admits, in the fine print in its spams and on its website, that it "does not perform analysis of the potential feasibility, marketability, patentability or profitability of ideas submitted to it." Since these are essential elements of new product development, Davison does not do new product development.

> Product Development definition: "The overall process of strategy, organization, concept generation, product and marketing plan creation and evaluation, and commercialization of a new product."

Entreprenuer, http://www.entrepreneur.com/encyclopedia/term/82414.html (last visited Dec. 29, 2011). *See also* Glen L. Urban & John R. Hauser, DESIGN AND MARKETING OF NEW PRODUCTS (Prentice Hall 1993).

> "The text begins with a discussion of innovation strategy and is the *[sic]* followed by five sections each representing a major phase in the new-product-development process: 1) Opportunity Identification, 2) Designing New Products, 3) Testing Products, 4) Introduction and 5) Managing the Life Cycle." (p. xxvi-xxvii)
>
> [Within step 1:] "After an organization has adopted a proactive approach to new-product development, the first step in implementing it is to identify areas of opportunity. This effort is divided into two steps. In the first step, markets and

> their associated technologies are defined and opportunities within them are assessed." (p. 78)
>
> [Within step 2:] "It is important to remember that in developing new products, market research is conducted to support decision making and to create knowledge, intelligence, and wisdom." (p. 179)

Thus, Davison cannot boldly advertise up front that it can develop new products, and then disclaim it in the fine print. The Ninth Circuit recently held that even truthful fine print cannot correct misleading prominent initial representations.

23. Riley is informed and believes and thereon alleges that GMB Direct Inc. is a business entity of unknown organization with a primary place of business in New York, New York, and operates the *ChristianJobsFinder.com* and *JobAlertsUSA.com* websites.

24. Riley is informed and believes and thereon alleges that QuoteWizard LLC is, and was at all relevant times, a Delaware limited liability company with a primary place of business in Seattle, Washington, and operates the *SaveUpTo800.com* website.

25. Riley is informed and believes and thereon alleges that Spark Networks USA LLC is, and was at all relevant times, a Delaware limited liability company with a primary place of business in Beverly Hills, California, and operates the *BlackSingles.com* website.

26. Riley is informed and believes and thereon alleges that Defendant Accelerize New Media Inc. ("Accelerize") is, and was at all relevant times, a Delaware corporation with a primary place of business in Santa Monica or Newport Beach, California. Riley is informed and believes and thereon alleges that Accelerize operates a "marketing and lead generation platform" using the domain name *Cktrk.net*. Riley is informed and believes and thereon alleges that for some of the spams at issue, Spire Vision hired Accelerize as its agent to advertise for it, and Accelerize in turn hired third parties – or in some cases a different Spire Vision entity – as its agents to

actually send the spams. Riley is informed and believes and thereon alleges that Accelerize is jointly and severally liable for these spams.

27. Riley is informed and believes and thereon alleges that Defendant Choice Home Warranty ("CHW") is, and was at all relevant times, a business entity of unknown organization with a primary place of business in Edison, New Jersey, and operates the *CHWplan.com* and *ChoiceHomeWarranty.com* websites.

28. Riley is informed and believes and thereon alleges that Defendant DailyFinanceGroup.com ("DailyFinanceGroup") is, and was at all relevant times, a business entity of unknown organization with an unknown primary place of business, and operates the *NationwideCash Express.DailyFinance Group.com* website. The domain name *DailyFinanceGroup.com* is proxy-registered so that Riley could not identify the true entity that owns the domain name by a Whois query. Riley could not find anything on the *NationwideCashExpress.DailyFinance Group.com* website identifying the true entity operating the website.

29. Riley is informed and believes and thereon alleges that Defendant Discover Financial Services Inc. ("Discover") is, and was at all relevant times, a Delaware corporation with a primary place of business in Riverwoods, Illinois.

30. Riley is informed and believes and thereon alleges that Defendant JBR Media Ventures LLC ("JBR") is, and was at all relevant times, a Delaware corporation with a primary place of business in Chevy Chase, Maryland, and operates the *TheCeruleanCard.com* website, which also advertises the Discover card.

31. Riley is informed and believes and thereon alleges that Defendant Web2Carz.com ("Web2Carz") is, and was at all relevant times, a business entity of unknown organization with a primary place of business in Riverwoods, Illinois, and operates the *Web2Carz.com* website. The

domain name *Web2Carz.com* is proxy-registered so that Riley could not identify the true entity that owns the domain name by a Whois query. Riley could not find anything on the *Web2Carz.com* website identifying the true entity operating the website.

32. Riley is informed and believes and thereon alleges that Defendant Vitality & Wellness Ltd. ("Vitality") is a United Kingdom limited company located in Haslemere, U.K., and operates the *EcigsBrand.com* website.

33. Riley does not know the true names or legal capacities of the Counter-Defendants sued herein as Does 1 through 100, inclusive, and therefore sue these Counter-Defendants under such fictitious names. Riley will amend this Counter-Claim to allege their true names and capacities when ascertained. Riley is informed and believes and thereon alleges that each fictitiously named Counter-Defendant is responsible in some manner for the matters alleged herein, and that Riley's injuries and damages alleged herein were proximately caused by their conduct.

## IV. FACTS

34. Riley is informed and believes and thereon alleges that at least some of the Spire Vision Counter-Defendants hold themselves out as an advertising network, connecting advertisers (such as Davison) with *third party* publishers or affiliates. *See, e.g.,CommissionWizard.com* – a website owned by Spire Vision. However, Spire Vision actually sent the 2011 spams at issue *themselves*, but took extraordinary steps to hide their identities as they did so. Spire Vision did not identify itself in the spams at all, not even by its purported "brands," providing only addresses at commercial mail receiving agencies in Flint, Michigan and Milford, Connecticut… states in which it has no physical presence. Moreover, the domain names advertised in and used to send the spams were registered to "ConnectionCentrals," "SilverInteractive," and "Credit Locator," claiming addresses at commercial mail receiving agencies in Flint, Michigan; Milford,

Connecticut; and Reno, Nevada. Riley was unable to identify any Spire Vision company by querying the Whois database to identify the registrants of the domain names used to send the spams at issue. Riley is informed and believes and thereon alleges that, at the time she received these spams, there was no generally known and publicly accessible database that clearly links "ConnectionCentrals," "SilverInteractive," and "Credit Locator" to any of the Spire Vision companies. Riley is informed and believes and thereon alleges that Spire Vision engaged in this scheme to prevent anyone from identifying Spire Vision as the true source of the spams by querying the Whois database to identify the registrant of the domain names.

35. The emails at issue in this Counter-Claim were all "commercial email advertisements" because they advertised and promoted the lease, sale, rental, gift offer, or other disposition of any property, goods, services, or extension of credit. *See* Cal. Bus. & Prof. Code § 17529.1(c).

36. The emails at issue in this Counter-Claim were all "unsolicited commercial email advertisements" because Riley never gave "direct consent" to any Counter-Defendant to send her commercial email, and Riley never had a "preexisting or current business relationship" with any Counter-Defendant. *See* Cal. Bus. & Prof. Code § 17529.1(o), (d), (*l*).[1]

37. Spire Vision and other Counter-Defendants advertised in and sent at least 59 unlawful spams to Riley in 2011.

---

[1] Riley had never heard of the websites *ClaimFreeRewards.com* and *WinYourCruise.com*, where Spire Vision claims she opted in to receive commercial email, prior to this litigation. *See* Second Amended Complaint at ¶ 11 (Docket #36). Nor had Riley ever heard of the website *YourSurveyOffers.com*, another website at which Spire Vision claims Riley opted in to receive commercial email. *See* Opposition to Riley's Motion to Dismiss (Docket #11-1, Ex. A). In fact, Riley has evidence in the form of bank records and passport stamps, which she already provided to Spire Vision's attorneys, that she was in Australia on April 18, 2009, when Spire Vision claims she opted in to receive commercial email from *YourSurveyOffers.com* while connected to the Internet using an Internet Protocol address located in South Carolina. Further proving that the opt-in record has been falsified, it shows Riley's name as "Catherine" even though her legal name is actually "Cathy" and she has never used "Catherine" for any purpose.

38. The dozens of domain names hyperlinked and advertised in the 2011 spams are owned and operated by Spire Vision. A person who clicks on a link in the spam causes his or her computer to launch an Internet browser, which redirects through *PromotionsTargeted.com*, also owned and operated by Spire Vision, and eventually ends up at the final "destination" websites, such as *Davison.com*, which are owned and operated by other advertisers, such as Davison.

39. Spire Vision and other Counter-Defendants advertised in and sent 12 unlawful spams to Riley in January 2013.

**A. <u>2011 Spams Advertising Spire Vision and Accelerated Performance – Channel Management LLC (3)</u>**

40. Riley received two spams advertising Spire Vision and APCM's website *AlmightyBible-Promotions.com* on March 27, 2011 with the From Name "Books for Children," and one spam on March 28, 2011 with the From Name "Kids Bible." The From Names do not identify Spire Vision or APCM. The From Names are misleading as to who the spams are actually *from.* A reasonable recipient could believe that "Books for Children" refers to the National Education Association's list of "Teachers' Top 100 Books for Children," *available at http://www.nea.org/grants/13154.htm*. A reasonable recipient could believe that "Kids Bible" refers to any of many websites, including but not limited to *ChildrensBible.com* or *BibleforChildren.org*.

**B. <u>2011 Spams Advertising Spire Vision and Stacey Bruck (2)</u>**

41. Riley received spams advertising Spire Vision and Stacey Bruck's website *FiveStarAutoProtection.com* on March 29 and April 3, 2011 with the From Name "Vehicle Protection." The From Name does not identify Spire Vision or Stacey Bruck/*FiveStarAuto Protection.com*. The From Name is misleading as to who the spams are actually *from.* A reasonable recipient could believe that "Vehicle Protection" refers to any of hundreds if not

thousands of websites related to "vehicle protection," which could include anything from insurance to rustproofing to alarms to Lojack recovery systems.

**C. <u>2011 Spams Advertising Spire Vision and Davison Design & Development Inc. (23)</u>**

42. Riley received spams advertising Spire Vision and Davison:

- On February 19, 2011 with the From Name "Davison Product Development" and the Subject Line "I challenge you to invent";
- On February 22, 2011 with the From Name "Davison Product Development" and the Subject Line "Invent and We will develop it";
- On February 23, 2011 with the From Name "Cathy Riley DavisonDesigns" and the Subject Line "Invent a product idea in February";
- On February 27, 2011 with the From Name "Cathy Riley DavisonDesigns" and the Subject Line "Value your idea Cathy Riley. Turn your idea into a product.";
- On March 3, 2011 with the From Name "Cathy Riley DavisonDesigns" and the Subject Line "Invent and We will develop it";
- On March 7, 2011 with the From Name "Davison Invention Center" and the Subject Line "Invent and We will develop it";
- On March 10, 2011 with the From Name "Davison Product Development" and the Subject Line "Inventing is a challenge you should attempt.";
- On March 13, 2011 with *no* From Name or Subject Line;
- On March 14, 2011 with the From Name "DavisonDesigns" and the Subject Line "Invent and We will develop it";
- On March 17, 2011 with the From Name "Cathy Riley DavisonDesigns" and the Subject Line "Invent and We will develop it";
- On March 20, 2011 with the From Name "Davison Making Ideas" and *no* Subject Line;
- On March 21, 2011 with the From Name "Davison Product Development" and the Subject Line "I challenge you to invent";
- On March 22, 2011 with the From Name "Davison: Making Ideas" and *no* Subject Line;
- On March 23, 2011 with the From Name "Davison Product Development" and the Subject Line "Are you up to the challenge to invent ?";
- On March 23, 2011 with *no* From Name or Subject Line;
- On March 23, 2011 with *no* From Name or Subject Line;
- On March 24, 2011 with the From Name "DavisonDesigns" and the Subject Line "I challenge you to invent";
- On March 27, 2011 with the From Name "DavisonDesigns" and the Subject Line "I challenge you to invent";
- On March 31, 2011 with the From Name "Davison Product Development" and the Subject Line "Invent and We will develop it";
- On March 31, 2011 with the From Name "Cathy Riley DavisonDesigns" and the Subject Line "Value your idea Cathy Riley. Turn your idea into a product.";

- On March 31, 2011 with the From Name "Cathy Riley DavisonDesigns" and the Subject Line "Are you up to the challenge to invent Cathy Riley?";
- On April 1, 2011 with the From Name "Davison Product Development" and the Subject Line "Invent and We will develop it"; and
- On April 5, 2011 with the From Name "Cathy Riley DavisonDesigns" and the Subject Line "Value your idea Cathy Riley. Turn your idea into a product."

43. The From Names that include "Cathy Riley" are false and misrepresented because these spams were not *from* Cathy Riley.

44. The From Names that say "Davison Product Development" and "Davison Invention Center" are false and misrepresented because Davison Design & Development Inc. does not do new product development and is not a center for inventions.

45. The Subject Lines that include "Invent and We will develop it" and "Turn your idea into a product" are false and are misleading because a reasonable recipient is likely to believe that Davison actually has the ability to develop inventions, to turn ideas into products, and to bring products to market, when Riley is informed and believes and thereon alleges that it has no ability to do so. More specifically, Riley is informed and believes and thereon alleges that new product development includes market research, definition, analysis and opportunity assessment; designing and testing product positioning concepts; creating marketing plans; and test marketing, among other functions. However, Davison itself admits in its emails and on its website that it "does not perform analysis of the potential feasibility, marketability, patentability or profitability of ideas submitted to it." Furthermore, historically 99.97% of would-be inventors lost money working with Davison, and *every* new inventor-client in 2011, when Davison advertised in the emails at issue, lost money working with Davison. Davison also discloses that only 0.001% of its income came from royalties on licenses of consumers' products, which means that 99.999% of Davison's income comes from up-front flat fees paid by would-be inventors. Riley is informed and believes and thereon alleges that every "Davison licensing deal" has a royalty

component, and since just 0.001% of its income comes from royalties, Davison's disclosures indicate that it has no real ability to actually successfully develop products and bring them to market successfully.

46. The blank From Names and Subject Lines also misrepresent the source of the emails and the contents of the emails.

**D. <u>2011 Spams Advertising Spire Vision and GMB Direct Inc. (3)</u>**

47. Riley received a spam advertising Spire Vision and GMB Direct Inc.'s website *JobAlertsUSA.com* on March 29, 2011 and two spams on March 30, 2011 with the From Name "ChristianJobs." The From Name does not identify Spire Vision or GMB Direct Inc. The From Name is misleading as to who the spams are actually *from.* A reasonable recipient could believe that "ChristianJobs" refers to any of hundreds if not thousands of websites related to Christian jobs, including but not limited to *ChristianJobs.com* or *MinistryEmployment.com*.

**E. <u>2011 Spams Advertising Spire Vision and QuoteWizard.com LLC (12)</u>**

48. Riley received spams advertising Spire Vision and QuoteWizard.com LLC's website *SaveUpTo800.com* on March 7, 2011 with the From Name "Car Insurance Policies," on March 7, March 30, and April 3, 2011 with the From Name "Best Car Insurance," on March 13 and March 16, 2011 with the From Name "Car Insurance Alternatives," on March 25, 2011 with the From Name "Insurance Secrets," two on April 1 and three on April 5, 2011 with the From Name "Best Insurance." None of these From Names identify Spire Vision or QuoteWizard.com LLC. The From Names are misleading as to who the spams are actually *from.* A reasonable recipient could believe that these From Names refer to any of hundreds if not thousands of websites selling car insurance or directing consumers to car insurance providers, including but not limited to *Esurance.com* or *MyCarInsuranceRates.com*.

**F. <u>2011 Spams Advertising Spire Vision and Spark Networks USA LLC (5)</u>**

49. Riley received spams advertising Spire Vision and Spark Networks USA LLC's website *BlackSingles.com*:

- On February 26, 2011 with the From Name "Black Singles Dating" and the Subject Line "Exclusive Site for Black Singles";
- On March 5, 2011 with the From Name "Black Singles Dating" and the Subject Line "March Promotion: Browse SC Black Singles At No Cost";
- On March 29, 2011 with the From Name "Black Singles Dating" and the Subject Line "Exclusive Site for Black Singles";
- On March 30, 2011 with the From Name "Black Singles Dating" and the Subject Line "Meet African American Singles in Your Area"; and
- On April 4, 2011 with the From Name "Black Singles Site" and the Subject Line "Meet African American Singles in Your Area."

50. Neither of these From Names identifies Spire Vision or Spark Networks USA LLC/*BlackSinglesDating.com*. The From Names are misleading as to who the spams are actually *from.* A reasonable recipient could believe that "Black Singles Dating" and "Black Singles Site" refer to any of numerous websites dedicated to African-American dating, including but not limited to *SoulSingles.com* or *BlackPeopleMeet.com*.

51. The two Subject Lines "Exclusive Site for Black Singles" are false because *BlackSingles.com* is *not* the exclusive dating website for Black Singles. Other similar websites include: *AfroIntroductions.com, AllBlackDating.com, BlackCupid.com, BlackDatingFree.com, BlackPeopleMeet.com, BlackPlanet.com, BlackScene.com, BlackTryst.com,FreeBlackDates.com, Match.com, PerfectMatch.com,* and *SoulSingles.com.*

**G. <u>2011 Spams Advertising Spire Vision and Other Unknown Advertisers (11)</u>**

52. Riley received a spam advertising Spire Vision and Doe 1 on March 9, 2011 with the From Name "Home Employment." This From Name does not identify Spire Vision or anyone else. The From Name is misleading as to who the spams are actually *from.* A reasonable

recipient could believe that "Home Employment" refers to any of numerous (often bogus) "work from home" websites.

53. Riley received spams advertising Spire Vision and Doe 2 on March 20, March 24, two on April 1, April 2, and April 4, 2011 with the From Name "Internet Job Locator Online." This From Name does not identify Spire Vision or anyone else. The From Name is misleading as to who the spams are actually *from.* A reasonable recipient could believe that "Internet Job Locator Online" refers to any of numerous websites dedicated to Internet jobsearch, such as *Monster.com* or *CareerBuilder.com*.

54. Riley received spams advertising Spire Vision and Doe 3 on March 21, March 23, April 3, and April 5, 2011 with the From Name "Unemployment Poll." This From Name does not identify Spire Vision or anyone else. The From Name is misleading as to who the spams are actually *from.* A reasonable recipient could believe that "Unemployment Poll" refers to any of numerous (usually bogus) "survey" websites.

**H. <u>2013 Spams Advertising Spire Vision, Michael DiMaio, David Smith, Accelerize, and On Demand Research LLC (3)</u>**

55. Riley received a spam on January 3, 2013 with the From Name "Starbucks Survey" and the Subject Line "Take this Starbucks survey to claim a giftcard!" The Subject Line does not even hint at any purchase requirements before the survey-taker can receive the gift card. The spam was sent from the domain name *saintreach.com*, which is registered to Michael DiMaio. Clicking the link in the spam causes an Internet browser to redirect through Accelerize dba *cktrk.net* before landing at On Demand Research LLC dba *OnDemandResearch.com.*

56. Riley received a spam on January 6, 2013 with the From Name "Online Starbucks Survey" and the Subject Line "Happy New Year - Answer this Starbucks survey and receive a $25 Starbucks giftcard" The Subject Line does not even hint at any purchase requirements

before the survey-taker can receive the gift card. The spam was sent from the domain name *clickandgetreward.com*, which is registered to David Smith. Clicking the link in the spam causes an Internet browser to redirect through Accelerize dba *cktrk.net* before landing at On Demand Research LLC dba *OnDemandResearch.com.*

57. Riley received a spam on January 7, 2013 with the From Name "Online Starbucks Survey" and the Subject Line "Answer this Starbucks survey and receive a $25 Starbucks giftcard" The Subject Line does not even hint at any purchase requirements before the survey-taker can receive the gift card. The spam was sent from the domain name *clickandgetreward.com*, which is registered to David Smith. Clicking the link in the spam causes an Internet browser to redirect through Accelerize dba *cktrk.net* before landing at On Demand Research LLC dba *OnDemandResearch.com.*

### I. 2013 Spams Advertising Spire Vision, David Smith, Accelerize, and Choice Home Warranty (1)

58. Riley received a spam on January 9, 2013 with the From Name "BackupYourHome" and the Subject Line "You never know when a covered major appliance in your home will break down." The spam was sent from the domain name *startgivingloanforyou.net*, which is registered to David Smith. Clicking the link in the spam causes an Internet browser to redirect through Accelerize dba *cktrk.net* before landing at CHW dba *CHWplan.com.*

### J. 2013 Spams Advertising Spire Vision, Michael DiMaio, Accelerize, and DailyFinanceGroup.com (1)

59. Riley received a spam on January 6, 2013 with the From Name "Nationwide Cash Express" and the Subject Line "Up to 1000 available." The spam was sent from the domain name *saintreach.com*, which is registered to Michael DiMaio. Clicking the link in the spam causes an Internet browser to redirect through Accelerize dba *cktrk.net* before landing at *NationwideCashExpress.DailyFinanceGroup.com.*

**K. <u>2013 Spams Advertising Spire Vision, Michael DiMaio, David Smith, Accelerize, JBR Media Ventures LLC, and Discover Financial Services Inc. (3)</u>**

60. Riley received a spam on January 6, 2013 with the From Name "Application Department" and the Subject Line "ZERO APP fees. Poor and NO credit OK!" The spam was sent from the domain name *saintreach.com*, which is registered to Michael DiMaio. Clicking the link in the spam causes an Internet browser to redirect through Accelerize dba *cktrk.net* before landing at JBR Media Ventures LLC dba *TheCeruleanCard.com.* The spam also advertises Discover.

61. Riley received a spam on January 8, 2013 with the From Name "Credit Card Services" and the Subject Line "APPLY for Cerulean DISCOVER credit card. NO app fee. Poor and NO credit OK!" The spam was sent from the domain name *saintreach.com*, which is registered to Michael DiMaio. Clicking the link in the spam causes an Internet browser to redirect through Accelerize dba *cktrk.net* before landing at JBR Media Ventures LLC dba *TheCeruleanCard.com.* The spam also advertises Discover.

62. Riley received a spam on January 8, 2013 with the From Name "Application Department" and the Subject Line "You must apply to be eligible for this new card." The spam was sent from the domain name *ukonlinesaving.com*, which is registered to David Smith. Clicking the link in the spam causes an Internet browser to redirect through Accelerize dba *cktrk.net* before landing at JBR Media Ventures LLC dba *TheCeruleanCard.com.* The spam also advertises Discover.

**L. <u>2013 Spams Advertising Spire Vision, Michael DiMaio, Accelerize, and Web2Carz.com (1)</u>**

63. Riley received a spam on January 6, 2013 with the From Name "AutoFinance" and the Subject Line "New and Used Cars, Vans, SUVs and Trucks." The spam was sent from the domain name *saintreach.com*, which is registered to Michael DiMaio. Clicking the link in the

spam causes an Internet browser to redirect through Accelerize dba *cktrk.net* before landing at *Web2Carz.com.*

**M. <u>2013 Spams Advertising Spire Vision, Michael DiMaio, David Smith, and Vitality & Wellness Ltd. (3)</u>**

64. Riley received a spam on January 4, 2013 with the From Name "Electronic Cigarette Free Trial" and the Subject Line "Make The Switch From Cigarettes in 2013." The spam was sent from the domain name *saintreach.com*, which is registered to Michael DiMaio. Clicking the link in the spam causes an Internet browser to redirect through Accelerize dba *cktrk.net* before landing at Vitality dba *ecigsbrand.com.*

65. Riley received a spam on January 7, 2013 with the From Name "2013 E-Cigs" and the Subject Line "I couldn't stop thinking of you when I saw this…." The spam was sent from the domain name *clickandgetreward.com*, which is registered to David Smith. Clicking the link in the spam causes an Internet browser to redirect through Accelerize dba *cktrk.net* before landing at Vitality dba *ecigsbrand.com.*

66. Riley received a spam on January 9, 2013 with the From Name "2013 E-Cigs" and the Subject Line "Hey, I thought of you when I saw this amazing thing…." The spam was sent from the domain name *clickandgetreward.com*, which is registered to David Smith. Clicking the link in the spam causes an Internet browser to redirect through Accelerize dba *cktrk.net* before landing at Vitality dba *ecigsbrand.com.*

**<u>FIRST CAUSE OF ACTION</u>**

**[Violations of California Restrictions on Unsolicited Commercial Email, California Business and Professions Code § 17529.5]**
**(Against All Counter-Defendants)**

67. Riley hereby incorporates each and every foregoing paragraph as though set forth in full herein.

68. Counter-Defendants advertised in and sent 59 unlawful spams to Riley's California email address in 2011.

69. Riley received the spams at issue within one year prior to filing her Counter-Claims.

70. Despite the fact that the Parties had been in litigation for more than a year and a half, and Riley had signaled in no uncertain terms that she did not want to receive any of Spire Vision's spams, Counter-Defendants nevertheless advertised in and/or sent 12 more unlawful spams to Riley in 2013.

**A. <u>Counter-Defendants Violated Cal. Business & Professions Code § 17529.5(a)(2) – False and Misrepresented Header Information</u>**

71. Cal. Business & Professions Code § 17529.5(a)(2) prohibits misrepresented information in or accompanying email headers.

***1. <u>Misrepresented Information in From Names – 2011 Spams</u>***

72. The From Name in an email is supposed to identify who the email is *from*; it is not supposed to be an advertising message.

73. The From Names of the 2011 spams at issue misrepresented *who* was advertising in the spams. In most cases, the From Names were ambiguous and generic, such as "Best Car Insurance," "Vehicle Protection," and "Unemployment Poll."

74. Generic From Names (e.g., "Paid Survey," "Christian Dating," "Bank Wire Transfer Available") that do not identify the advertiser/sender violate Cal. Business & Professions Code § 17529.5(a)(2). *Balsam v. Trancos Inc. et al*, 203 Cal. App. 4th 1083, 1088, 1093 (1st Dist. 2012) (affirming trial court judgment in all respects, including findings that the generic sender names do not exist or are otherwise misrepresented because they do not represent any real company and cannot be readily traced back to the true owner/sender), *petition for review denied*,

2012 Cal. LEXIS 4979 (Cal. May 23, 2012), *petition for certiori denied*, 2012 U.S. LEXIS 8423 (U.S. Oct. 29, 2012), *petition for rehearing denied*, 2013 U.S. LEXIS 243 (U.S. Jan. 7, 2013).

75. The blank From Names of the Davison spams also misrepresent who the spams are from.

76. In seven of the spams advertising Davison, the spams falsely included Riley's name in the *From Name* field, even though the spams are *not* from her.

77. In eight of the spams advertising Davison, the From Names "Davison Invention Center" and "Davison Product Development" contain misrepresented information because Davison does not develop new products.

***2. Misrepresented and False Information in From Names – 2013 Spams***

78. The From Names of the 2013 spams at issue misrepresented *who* was advertising in the spams.

79. In most cases, the From Names were ambiguous and generic, such as "Electronic Cigarette Free Trial," "Application Department," and "BackupYourHome."

80. Spams advertising On Demand Research LLC had the From Names "Starbucks Survey" (one) and "Online Starbucks Survey" (two). These From Names contain false and misrepresented information because the spams were not *from* Starbucks.

81. Riley is a frequent Starbucks customer. Riley believed that these emails were from Starbucks and relied on the From Names "Starbucks Survey" and "Online Starbucks Survey" when she opened the emails.

***3. Misrepresented Information in Domain Name Registrations – 2011 Spams***

82. None of the 25 domain names Spire Vision used to send the 2011 spams at issue, facially identified any of the Spire Vision companies.

83. None of the 25 domain names Spire Vision used to send the 2011 spams at issue were readily traceable to any of the Spire Vision companies in any way (including but not limited to the public Whois database).

84. Fifteen of the 25 domain names Spire Vision used to send and advertise in the spams at issue – *cashbeyond.com*, *clearadvertisements.com*, *coralmultimedia.com*, *equisetumcorporate.com*, *financialachieve.com*, *guideonoptimize.com*, *lakesidebeachsystems.com*, *loliumadvice.com*, *nielsbohrmedia.com*, *nightingalemarketing.com*, *rubymutual.com*, *saturnclick.com*, *sherwoodmodified.com*, *solutionsresponse.com*, and *whynotaccept.com* – were registered to "SilverInteractive," which is a nonexistent company and does not identify Spire Vision, claiming its address to be a box at a branch of The UPS Store in Flint, Michigan – a state in which Spire Vision has no physical presence.

85. Seven of the 25 domain names Spire Vision used to send and advertise in the spams at issue – *bargainslibrary.com*, *getsmartnews.net*, *mybargainfetch.com*, *mybetterbargains.com*, *singlepromotions.com*, *wisharticlenews.com*, and *yourfinancialcontact.com* – were registered to "Connection Centrals" or "Connection Centrals LLC," which are nonexistent companies and do not identify Spire Vision, claiming its address to be a box at a box at a branch of The UPS Store in Milford, Connecticut – a state in which Spire Vision has no physical presence.

86. Three of the 25 domain names Spire Vision used to send the spams at issue – *acquisitionaccount.com*, *acquisitionbalance.com*, and *acquisitioncredit.com* – were registered to "Credit Locator," which is a nonexistent company and does not identify Spire Vision, claiming its address to be a box at a branch of The UPS Store in Reno, Nevada.

87. In short, Riley is informed and believes and thereon alleges that Spire Vision knowingly and willfully registered all 25 of the domain names it used to send and advertise in the spams at

issue using false and inaccurate names, and boxes at commercial mail receiving agencies, so that the domain names were not traceable to Spire Vision and misrepresented the source of the spams.

88. Because all 25 of the domain names Spire Vision used to send the spams at issue neither identify Spire Vision on their face nor are readily traceable to Spire Vision, the email headers contain falsified and misrepresented information in violation of Cal. Business & Professions Code § 17529.5.

> [W]here, as in this case, the commercial e-mailer intentionally uses . . . domain names in its headers that neither disclose the true sender's identity on their face nor permit the recipient to readily identify the sender, . . . such header information *is* deceptive and *does* constitute a falsification or misrepresentation of the sender's identity. . . .
>
> Here, the domain names were *not* traceable to the actual sender. The header information is "falsified" or "misrepresented" because Trancos deliberately created it to prevent the recipient from identifying who actually sent the message. . . . . an e-mail with a made-up *and untraceable* domain name affirmatively *and falsely* represents the sender has no connection to Trancos.
>
> Allowing commercial e-mailers like Trancos to conceal themselves behind untraceable domain names amplifies the likelihood of Internet fraud and abuse--the very evils for which the Legislature found it necessary to regulate such e-mails when it passed the Anti-spam Law.
>
> We therefore hold, consistent with the trial court's ruling, that header information in a commercial e-mail is falsified or misrepresented for purposes of section 17529.5(a)(2) when it uses a sender domain name that *neither* identifies the actual sender on its face *nor* is readily traceable to the sender using a publicly available online database such as WHOIS.

*Trancos*, 203 Cal. App. 4th at 1097-1101 (emphasis in original).

### *4. Misrepresented and False Information in Subject Lines – 2011 Spams*

89. The Subject Lines (part of the headers) of the Davison spams described above contain misrepresented information relating to Davison's capabilities to develop products. By Davison's own admissions, 99.999% of its income comes from up-front fees paid by inventors, as opposed

to royalties from licensing arrangements, and historically 99.97% of would-be inventors, and *all* would-be inventors in 2011, lost money working with Davison.

90. Subject Lines such as "Invent and we will develop it" (seven) and "Value your idea Cathy Riley. Turn your idea into a product" (three) are false and misrepresent the functions that Davison actually undertakes, in that Davison does not conduct numerous critical steps of the new product development process. These Subject Lines also misrepresent Davison's likelihood of actually turning ideas into products and developing inventions successfully. Thus, a consumer who reasonably believed that "Invent and we will develop it" and "… Turn your idea into a product" means that Davison can successfully develop inventions and turn ideas into products would be sorely misled.

91. In contrast, Riley does *not* claim that Subject Line "Invent a product idea in February" (one) is misleading because it refers only to *inventing*, which is entirely within the purview of the consumer/recipient of the email, and not *developing* an invention or *turning* an idea into a product. Unlike "Invent and we will develop it" and "Value your idea Cathy Riley. Turn your idea into a product," this Subject Line is only a challenge; it does not state or suggest that *Davison* has any ability to execute the new product development process.

92. The five blank Subject Lines of the Davison spams are also likely to mislead a reasonable recipient about the contents of the spams.

93. The two Subject Lines adverting Spark's website *BlackSingles.com* – "Exclusive Site for Black Singles" – are false because *BlackSingles.com* is *not* the exclusive dating website for Black Singles. Other similar websites include: *AfroIntroductions.com, AllBlackDating.com, BlackCupid.com, BlackDatingFree.com, BlackPeopleMeet.com, BlackPlanet.com,*

*BlackScene.com, BlackTryst.com,FreeBlackDates.com, Match.com, PerfectMatch.com,* and *SoulSingles.com.*

***5. Misrepresented and False Information in Subject Lines – 2013 Spams***

94. The three spams advertising On Demand Research LLC had the Subject Lines "Take this Starbucks survey to claim a giftcard!," "Happy New Year – Answer this Starbucks survey and receive a $25 Starbucks giftcard," and "Answer this Starbucks survey and receive a $25 Starbucks giftcard." These Subject Lines all contain false and misrepresented information because they suggest that *all* a person has to do to claim a gift card is take a survey." In fact, according to the On Demand Research Gift Rules, a person

> must complete the survey page and continue through the special offers for sampling and purchasing products of interest, in addition to completing all other requirements of the Prize. . . . Special offers include expressions of interest, trials, credit cards, product offers, service offers, or other commercial offers. Some offers require a purchase to be made, while others are free trials that convert to paying obligations or free applications that do not require an initial purchase. Others require approval or activation of an account.

95. *Hypertouch Inc. v. ValueClick Inc.* ruled that spam Subject Lines "suggest[ing] that the recipient can obtain something free for doing a particular task ([ ] 'Do you think Hillary will win? Participate now for a Visa gift card')," with no qualifying language, are likely to mislead consumers about the terms and conditions of an offer and violate the statute. 192 Cal. App. 4th 805, 840 (2d Dist. 2011).

> If a subject line creates the impression that the content of the e-mail will allow the recipient to obtain a free gift by doing one act (such as opening the e-mail or participating in a single survey), and the content of the e-mail reveals that the "gift" can only be obtained by undertaking more onerous tasks (such as paying money for the gift or agreeing to partake in other offers), the subject line is misleading about the contents of the e-mail.

*Id.* at 838. Here, not only are the Subject Lines misleading in and of themselves, but the bodies of the spams do *not* reference purchase requirements to attempt to "cure" the misleading Subject Lines. Thus, these spams are even "more unlawful" than those at issue in *Hypertouch*.

96. Furthermore, Riley is informed and believes and thereon alleges that on July 29, 2013, the Federal Trade Commission sued Acquinity Interactive LLC and others in the U.S. District Court for the Northern District of Illinois (case no. 1:13-cv-05380) for deceptively advertising "free" gift cards when consumers actually have to disclose significant amounts of personal information and "participate in third party offers" – i.e., spend money – in order to receive the "free" item.

97. While the allegations of the *FTC v. Acquinity Interactive* complaint are admittedly somewhat different than the instant facts, this case is relevant because it demonstrates that the Federal Trade Commission – the agency responsible for regulating marketing – considers it to be a deceptive practice to fail to clearly disclose purchase requirements associated with "free" items.

98. The spam advertising Spire Vision and Web2Carz has the Subject Line "New and Used Cars, Vans, SUVs and Trucks." This suggests that the merchant is selling vehicles, which is false and misrepresents the fact that Web2Carz actually offers auto loans.

99. The January 7 and 9, 2013 spams advertising Spire Vision and Vitality had the Subject Lines "I couldn't stop thinking of you when I saw this…" and "Hey, I thought of you when I saw this amazing thing…." These Subject Lines misrepresent what the spams are really about: electronic cigarettes. Moreover, because Riley is not and never has been a smoker, an electronic cigarette would *not* make anyone think of Riley.

100. The January 8, 2013 spam advertising Spire Vision, Discover, and JBR has the Subject Line "You must apply to be eligible for this new card." This Subject Line is false and contains misrepresented information, because the body of the spam states that "As a recipient of this notice, you are hereby eligible to complete an application for consideration of credit." In other words, the Subject Line suggests that the recipient is eligible for the card once s/he applies, but the body undermines this claim by stating that the only thing the recipient is eligible for is to complete an application.

**B. Counter-Defendants Violated Cal. Business & Professions Code § 17529.5(a)(3) – Misleading Subject Lines**

***1. Misleading Subject Lines – 2011 Spams***

101. Cal. Business & Professions Code § 17529.5(a)(3) prohibits Subject Lines likely to mislead a reasonable recipient as to the contents or subject matter of the spams.

102. The Subject Lines of the Davison spams described above are likely to mislead a reasonable recipient into believing that Davison has the capabilities to develop products and bring them to market successfully, when it cannot do so. By Davison's own admissions, 99.999% of its income comes from up-front fees paid by inventors, as opposed to royalties from licensing arrangements, and historically 99.97% of would-be inventors, and *all* would-be inventors in 2011, lost money working with Davison.

103. Subject Lines such as "Invent and we will develop it" (seven) and "Value your idea Cathy Riley. Turn your idea into a product" (three) are likely to mislead a consumer/recipient as to the functions that Davison actually undertakes, in that Davison does not conduct numerous critical steps of the new product development process. These Subject Lines also misrepresent Davison's likelihood of actually turning ideas into products and developing inventions successfully. Thus, a consumer who reasonably believed that "Invent and we will develop it"

and "… Turn your idea into a product" means that Davison can successfully develop inventions and turn ideas into products would be sorely misled.

104. Additionally, Subject Lines such as "Invent and we will develop it" (seven) and "Value your idea Cathy Riley. Turn your idea into a product" (three) are likely to mislead a consumer/recipient as to the contents of the spams, because the Subject Lines stating that Davison develops new products conflict with text in the bodies of the spams that "Davison does not perform analysis of the potential feasibility, marketability, patentability or profitability of ideas submitted to it" – all of which are essential steps in the new product development process.

105. In contrast, Riley does *not* claim that Subject Line "Invent a product idea in February" (one) is misleading because it refers only to *inventing*, which is entirely within the purview of the consumer/recipient of the email, and not *developing* an invention or *turning* an idea into a product. Unlike "Invent and we will develop it" and "Value your idea Cathy Riley. Turn your idea into a product," this Subject Line is only a challenge; it does not state or suggest that Davison has any ability to execute the new product development process.

106. The five blank Subject Lines of the Davison spams are also likely to mislead a reasonable recipient about the contents of the spams.

***2. <u>Misleading Subject Lines – 2013 Spams</u>***

107. The three spams advertising On Demand Research LLC had the Subject Lines "Take this Starbucks survey to claim a giftcard!," "Happy New Year – Answer this Starbucks survey and receive a $25 Starbucks giftcard," and "Answer this Starbucks survey and receive a $25 Starbucks giftcard." These Subject Lines all contain misleading information because they suggest that *all* a person has to do to claim a gift card is take a survey." In fact, according to the On Demand Research Gift Rules, a person

> must complete the survey page and continue through the special offers for sampling and purchasing products of interest, in addition to completing all other requirements of the Prize. . . . Special offers include expressions of interest, trials, credit cards, product offers, service offers, or other commercial offers. Some offers require a purchase to be made, while others are free trials that convert to paying obligations or free applications that do not require an initial purchase. Others require approval or activation of an account.

108. *Hypertouch Inc. v. ValueClick Inc.* ruled that spam Subject Lines "suggest[ing] that the recipient can obtain something free for doing a particular task ([ ] 'Do you think Hillary will win? Participate now for a Visa gift card')," with no qualifying language, are likely to mislead consumers about the terms and conditions of an offer and violate the statute. 192 Cal. App. 4th 805, 840 (2d Dist. 2011).

> If a subject line creates the impression that the content of the e-mail will allow the recipient to obtain a free gift by doing one act (such as opening the e-mail or participating in a single survey), and the content of the e-mail reveals that the "gift" can only be obtained by undertaking more onerous tasks (such as paying money for the gift or agreeing to partake in other offers), the subject line is misleading about the contents of the e-mail.

*Id.* at 838. Here, not only are the Subject Lines misleading in and of themselves, but the bodies of the spams do *not* reference purchase requirements to attempt to "cure" the misleading Subject Lines. Thus, these spams are even "more unlawful" than those at issue in *Hypertouch*.

109. Furthermore, Riley is informed and believes and thereon alleges that on July 29, 2013, the Federal Trade Commission sued Acquinity Interactive LLC and others in the U.S. District Court for the Northern District of Illinois (case no. 1:13-cv-05380) for deceptively advertising "free" gift cards when consumers actually have to disclose significant amounts of personal information and "participate in third party offers" – i.e., spend money – in order to receive the "free" item.

110. While the allegations of the *FTC v. Acquinity Interactive* complaint are admittedly somewhat different than the instant facts, this case is relevant because it demonstrates that the

Federal Trade Commission – the agency responsible for regulating marketing – considers it to be a deceptive practice to fail to clearly disclose purchase requirements associated with "free" items.

111. The spam advertising Spire Vision and Web2Carz has the Subject Line "New and Used Cars, Vans, SUVs and Trucks." This suggests that the merchant is selling vehicles, which is misleading as to the body of the spam, which indicates that Web2Carz actually offers auto loans.

112. The January 7 and 9, 2013 spams advertising Spire Vision and Vitality had the Subject Lines "I couldn't stop thinking of you when I saw this…" and "Hey, I thought of you when I saw this amazing thing…." These Subject Lines are misleading as to what the spams are really about: electronic cigarettes. Moreover, because Riley is not and never has been a smoker, an electronic cigarette would *not* make anyone think of Riley.

113. The January 8, 2013 spam advertising Spire Vision, Discover, and JBR has the Subject Line "You must apply to be eligible for this new card." This Subject Line is misleading as to the contents of the spam, which state that "As a recipient of this notice, you are hereby eligible to complete an application for consideration of credit." In other words, the Subject Line suggests that the recipient is eligible for the card once s/he applies, but the body undermines this claim by stating that the only thing the recipient is eligible for is to complete an application.

### C. <u>Riley Suffered Damages; Recipients of Unlawful Spam Have Standing to Sue Under Cal. Business & Professions Code § 17529.5 and Recover $1,000 Per Spam Liquidated Damages</u>

114. Recipients of unlawful spam have standing to sue. *See* Cal. Bus. & Prof. Code § 17529.5(b)(1)(A)(iii). Nothing in the statute requires that a recipient click and purchase the goods or services advertised in the spam.

> Like several other California consumer protection statutes targeting deceptive advertising practices, section 17529.5 dispenses with many of the elements associated with common law fraud, which normally requires the plaintiff to prove

> (a) [a] misrepresentation ... ; (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.
>
> Finally, section 17529.5 differs from common law fraud in that it does not require the plaintiff to prove that it relied on the deceptive commercial e-mail message or that it incurred damages as a result of the deceptive message.

*Hypertouch*, 192 Cal. App. 4th at 820, 822.

115. Riley objects to any enhanced pleading requirement beyond simply alleging receipt of unlawful spams. To the extent that this Court stated that pleading reliance and damages is necessary (*see* Docket #149, 188), Riley objects because such pleading is not required under the CAN-SPAM Act to avoid preemption, *See* 15 U.S.C. § 7707(b)(1), in which Congress stated that the exception to preemption is based on *falsity*, not fraud, *See also Hoang v. Reunion.com*, 2010 U.S. Dist. LEXIS 34466 (N.D. Cal. Mar. 31, 2010), in which the District Court – after and in direct response to the Ninth Circuit's ruling in *Gordon v. Virtumundo Inc.*, 575 F.3d 1040 (9th Cir. 2009) – reversed its previous order and denied Reunion.com's Motion to Dismiss, stating that pursuant to *Gordon*, "plaintiffs' failure to allege they relied to their detrimental [sic] on the alleged false statements in defendant's e-mails does not constitute a ground for dismissal of their claims." Riley intends to appeal this issue after judgment.

116. Riley opened the emails, relying on the generic, ambiguous From Names (and, for seven spams, her *own* name in the From Name), to see if emails were sent from someone to whom she actually gave direct consent to send her commercial emails. Riley also relied on "Starbucks" in the From Name of three spams when she opened the spams, believing that the email was actually *from* Starbucks.

117. Riley suffered damages as a result of Counter-Defendants' wrongful conduct. *See* Cal. Bus. & Prof. Code § 17529(d), (e), (g), (h).

118. The California Legislature set liquidated damages at One Thousand Dollars ($1,000) per email in violation of the statute. *See* Cal. Bus. & Prof. Code § 17529.5(b)(1)(B)(ii).

119. For each spam, the Spire Vision Counter-Defendant and the other advertiser Counter-Defendant are jointly and severally liable for damages.

120. Cal. Business & Professions Code § 17529.5 prohibits false and deceptive spam, and thus falls within the express exception-to-preemption set forth in the federal CAN-SPAM Act at 15 U.S.C. § 7707(b)(1). The exception to preemption is based on *falsity*, not fraud, and Riley is not required to allege or prove the traditional elements of fraud. *See Hypertouch Inc. v. ValueClick Inc.*, 192 Cal. App. 4th 805, 825 (2d Dist. 2011), and *Trancos*, 203 Cal. App. 4th at 1102.

**D. Counter-Defendants are Not Entitled to a Reduction in Statutory Damages**

121. Riley is informed and believes and thereon alleges that Counter-Defendants have not established and implemented, with due care, practices and procedures reasonably designed to effectively prevent unsolicited commercial e-mail advertisements that are in violation of Cal. Business & Professions Code § 17529.5.

122. Indeed, the Spire Vision Counter-Defendants admit that they acquire email address from other sources.

123. The fact that Riley received 12 more spams advertising and/or sent by Spire Vision in January 2013, a year and a half after Spire Vision sued Riley, eviscerates Spire Vision's claim that it only sends commercial emails to people who requested to receive them.

124. Moreover, From Names and Subject Lines do not write themselves; the From Names and Subject Lines in the spams at issue were not "clerical errors."

125. Additionally, Spire Vision's actions of registering its Internet domain names to nonexistent companies using boxes at branches of The UPS Store in other states indicates willful decisions to create false and misrepresented information in and accompanying the email headers.

126. The Counter-Defendants *other* than the Spire Vision Counter-Defendants are not entitled to a reduction in damages because they are liable for the actions of the Spire Vision Counter-Defendants, who acted as their agents.

**E. <u>Riley is Entitled to Attorneys' Fees</u>**

127. Riley seeks reimbursement of attorneys' fees and costs as authorized by Cal. Business & Professions Code § 17529.5(b)(1)(C).

128. The attorneys' fees provision for a prevailing plaintiff is typical of consumer protection statutes and supported by Cal. Code of Civil Procedure § 1021.5. By prosecuting this action, Riley expects to enforce an important right affecting the public interest and thereby confer a significant benefit on the general public or a large class of persons. The necessity and financial burden of private enforcement is such as to make the award appropriate, and the attorneys' fees should not, in the interest of justice, be paid out of the recovery of damages.

WHEREFORE, Riley prays for judgment against Counter-Defendants, and each of them, as hereinafter set forth.

## PRAYER FOR RELIEF

A. An Order from this Court declaring that Counter-Defendants violated Cal. Business & Professions Code § 17529.5 by advertising in and sending unlawful spams to Riley's California email address.

B. Liquidated damages against Counter-Defendants in the amount of $71,000 – $1,000 for each of 71 unlawful spams – as authorized by Cal. Business & Professions Code § 17529.5(b)(1)(B)(ii), as detailed below:

1. Jointly and severally against Spire Vision and Accelerated Performance – Channel Management LLC: $3,000 for 3 unlawful spams.

2. Jointly and severally against Spire Vision and Stacey Bruck: $2,000 for 2 unlawful spams.

3. Jointly and severally against Spire Vision and Davison Design & Development Inc.: $23,000 for 23 unlawful spams.

4. Jointly and severally against Spire Vision and GMB Direct Inc.: $3,000 for 3 unlawful spams.

5. Jointly and severally against Spire Vision and QuoteWizard.com LLC: $12,000 for 12 unlawful spams.

6. Jointly and severally against Spire Vision and Spark Networks USA LLC: $5,000 for 5 unlawful spams.

7. Jointly and severally against Spire Vision and Doe 1: $1,000 for 1 unlawful spam.

8. Jointly and severally against Spire Vision and Doe 2: $6,000 for 6 unlawful spams.

9. Jointly and severally against Spire Vision and Doe 3: $4,000 for 4 unlawful spams.

10. Jointly and severally against Spire Vision, Michael DiMaio, Accelerize New Media Inc., and On Demand Research LLC: $1,000 for 1 unlawful spam. Jointly and severally against Spire Vision, David Smith, Accelerize New Media Inc., and On Demand Research LLC: $2,000 for 2 unlawful spams.

11. Jointly and severally against Spire Vision, David Smith, Accelerize New Media Inc., and Choice Home Warranty: $1,000 for 1 unlawful spam.

12. Jointly and severally against Spire Vision, Michael DiMaio, Accelerize, and DailyFinanceGroup.com: $1,000 for 1 unlawful spam.

13. Jointly and severally against Spire Vision, Michael DiMaio, Accelerize New Media Inc., JBR Media Ventures LLC, and Discover Financial Services Inc.: $2,000 for 2 unlawful spams. Jointly and severally against Spire Vision, David Smith, Accelerize New Media Inc., JBR Media Ventures LLC, and Discover Financial Services Inc.: $1,000 for 1 unlawful spam.

14. Jointly and severally against Spire Vision, Michael DiMaio, Accelerize New Media Inc., and Web2Carz.com: $1,000 for 1 unlawful spam.

15. Jointly and severally against Spire Vision, Michael DiMaio, Accelerize New Media Inc., and Vitality & Wellness Ltd.: $1,000 for 1 unlawful spam. Jointly and severally against Spire Vision, David Smith, Accelerize New Media Inc., and Vitality & Wellness Ltd.: $2,000 for 2 unlawful spams.

C. Punitive damages against the Spire Vision Counter-Defendants as authorized by Cal. Civil Code § 3294 in an amount to be determined by the Court.

D. Attorneys' fees as authorized by Cal. Business & Professions Code § 17529.5(b)(1)(C), and Cal. Code of Civil Procedure § 1021.5.

E. Disgorgement of all profits derived from unlawful spams directed to California residents.

F. Costs of suit.

G. Such other and further relief as the Court deems proper.

**DEMAND FOR JURY TRIAL**

Riley demands a trial by jury.

THE LAW OFFICES OF DANIEL BALSAM

Dated: August 23, 2013

/s/ Daniel L. Balsam
Daniel L. Balsam
Attorneys for Counter-Complainant Cathy Riley